# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Mark Filip | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 1388 | **DATE** | 6/7/2004 |
| **CASE TITLE** | Miroballi Shoe, Inc. vs. Nine West Footwear Corp. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due ___ ___.

(3) ☐ Answer brief to motion due___ ___. Reply to answer brief due___ ___.

(4) ☐ Ruling/Hearing on _____ set for __ ___ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on ___ ___ set for ____ _ at ___ ___.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on ___ ___ set for _____ at ____ _.

(7) ☐ Trial[set for/re-set for] on __ ____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: For the reasons stated in the Court's Memorandum Opinion and Order, Plaintiff's Motion for Summary Judgment [45-1] is granted in part and denied in part, Defendant's Motion for Summary Judgment [46-1] is denied, and Defendant's Motion to Bar the Testimony of Cornelius Hofman [50-1] is denied without prejudice.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | |
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | JUN 0 8 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 70 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | | | date mailed notice | |
| TBK | courtroom deputy's initials | | | |
| | | Date/time received in Central Clerk's Office | mailing deputy initials | |

| | | |
|---|---|---|
| MIROBALLI SHOE, INC., an Illinois corporation | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 02 C 1388 |
| | ) | |
| v. | ) | Judge Mark Filip |
| | ) | |
| NINE WEST FOOTWEAR CORPORATION, a Delaware corporation, | ) | |
| | ) | |
| Defendant. | ) | |

**DOCKETED**

**JUN 0 8 2004**

## MEMORANDUM OPINION AND ORDER

Plaintiff Miroballi Shoe, Inc. ("Miroballi" or "Plaintiff"),[1] which is in the business of

retail footwear sales, has brought suit against Defendant Nine West Footwear Corporation ("Nine

West Footwear" or "Defendant"), which is in the business of manufacturing and selling footwear.

Plaintiff alleges that Defendant breached seven substantively identical agreements relating to

"Easy Spirit" brand footwear products to be provided to seven different Miroballi stores in the

Chicago area. Plaintiff has moved for summary judgment as to liability, seeking to reserve only

the issue of damages for trial. Defendant has cross-moved for summary judgment in full and has

separately moved to bar the testimony of Plaintiff's damages expert, Cornelius Hofman. For the

reasons stated below, Plaintiff's motion for partial summary judgment is granted in part and

denied in part, Defendant's motion for summary judgment is denied, and Defendant's motion to

---

[1]The parties agree that on or about 1996, Miroballi Shoe Inc. acquired all of the assets and liabilities of Miroballi Shoe Company II, including the rights and obligations under the license agreements at issue in the case. (D.E. 65 at 1-2.) Consistent with the practice of the parties, the Court will collectively refer to both Miroballi entities as "Miroballi."

$7^0$

bar the testimony of Cornelius Hofman is denied without prejudice. Defendant may refile its motion to bar the testimony of Plaintiff's damages expert during the time period for the filing of motions in limine that will be scheduled in the final pretrial order.

<h2 style="text-align:center">RELEVANT FACTS</h2>

A.     The License Agreements

Miroballi has been in business since 1959 and operates multi-branded shoe stores under the name "Miroballi" throughout the Chicago area. Beginning in 1959, the Miroballi family began its relationship with U.S. Shoe Corporation ("U.S. Shoe"). (D.E. 65 at 3.)

In 1978, pursuant to an agreement with U.S. Shoe, Miroballi opened what is known as a "concept store." A "concept store" targets a particular customer demographic and sells shoes of a single brand name, providing various categories of shoes under that brand name, such as, for example, sport, athletic, dress, or tailored. The concept store Miroballi opened in 1978 was for Red Cross shoes. (Id.)

In 1991, pursuant to an agreement with U.S. Shoe, Miroballi opened a concept store for "Easy Spirit" shoes in the Chicago Place mall in Chicago, Illinois. That same year, U.S. Shoe also opened its own Easy Spirit concept store in Texas (such stores are hereinafter referred to as "company owned"). The purpose of these two stores was to test the market for the Easy Spirit concept.

In 1993 and 1994, Miroballi entered into seven agreements with U.S. Shoe entitled "Independent Operators Concept Shoe Store Agreement" ("the license agreements") to establish a total of seven Easy Spirit stores in the Chicago area. (Id. at 5.) Each license agreement contains a paragraph 2, which is central to the dispute before the Court, and which states that

2

"U.S. Shoe further agrees to make available to [Miroballi] during the term of this Agreement a complete line of all products which the United States Shoe Corporation, manufactures and/or distributes, as described in Paragraph 6 below." (D.E. 37 at Ex. B, ¶ 2.) Paragraph 6 of each license agreement in turn states, in relevant part, that

> [Miroballi] will maintain and offer for sale to the public at all times at the location described above only footwear products which are based on "comfort" construction and which are manufactured and/or distributed by the Easy Spirit, Cobbie, Joyce, Selby and Marx & Newman Division of The United States Shoe Corporation. The term "footwear", as used herein, shall refer to all shoes, boots and foot coverings, excluding socks and hosiery. The determination of whether a product incorporates "comfort" construction shall be at the reasonable discretion of U.S. Shoe. Such products will be stocked in both a current and comprehensive assortment of styles and sufficient quantity to meet the reasonably projected consumer market available to an actively promoted EASY SPIRIT concept shoe store.

(*Id.*, ¶ 6.) Although the license agreements reference footwear brands other than Easy Spirit, the parties agree that the purpose of the agreements was to allow Miroballi to operate Easy Spirit concept stores. (D.E. 60 at 2.) The parties dispute how long the contracts were to be in effect but agree that many of the contracts lasted for several years and that at least one would not expire until 2004. (D.E. 65 at 5-8.)

In 1995, Nine West Footwear's parent corporation, Nine West Group, Inc., and its wholly-owned subsidiary, Footwear Acquisition Corp., entered into an asset purchase agreement with U.S. Shoe. Pursuant to the asset purchase agreement, U.S. Shoe sold and assigned the assets and liabilities of its wholesale and retail footwear business to Footwear Acquisition Corp. (D.E. 60 at 2.) Prior to the closing of the transaction, Footwear Acquisition Corp. transferred the right to receive the wholesale footwear assets of U.S. Shoe to Nine West Footwear, and

transferred the retail footwear assets of U.S. Shoe to Nine West Group, Inc.[2] (D.E. 60 at 2.)

As a result of the transaction, Nine West Group, Inc. operated the Easy Spirit Retail Division.[3] (D.E. 64 at 3 n.3.) The Retail Division sells Easy Spirit footwear directly to the public through corporate owned Easy Spirit stores in the Chicago area and nationwide, the Easy Spirit website, and the Easy Spirit catalog. (D.E. 65 at 12.) For its part, Nine West Footwear operates the Easy Spirit Wholesale Division. The Easy Spirit Wholesale Division distributes Easy Spirit footwear to department stores and all independent Easy Spirit concept store operators, such as Miroballi. (D.E. 65 at 11-12.) Some of the Easy Spirit footwear products sold by the Retail Division are not sold by the Wholesale Division. (D.E. 64 at 2-3.)

The crux of this lawsuit centers around the fact that, as part of the 1995 asset purchase transaction, Nine West Footwear assumed U.S. Shoe's obligations and liabilities under the license agreements. (D.E. 65 at 11.) In Miroballi's view, the most significant problem is that Nine West Footwear has admittedly not provided Miroballi with the complete line of Easy Spirit footwear sold by the Easy Spirit Retail Division. (D.E. 54 at 9-10.) Consequently, for example, approximately twice a week, a shopper at one of the Miroballi Easy Spirit stores will ask for an

---

[2]Miroballi agrees with Nine West Footwear that in 1995, Nine West Group, Inc. received U.S. Shoe's retail footwear assets and that U.S. Shoe's "Wholesale Division of Easy Spirit became a division of Nine West Footwear." (D.E. 65 at 10-11.) The parties also agree that Nine West Footwear "assumed the rights and obligations of U.S. Shoe under each of the seven [license] Agreements." (*Id.* at 11.) However, Miroballi contests Nine West Footwear's characterization of the license agreements as "assets and liabilities of the wholesale operations of U.S. Shoe's footwear business." (D.E. 60 at 2-3.) As explained more fully below, Miroballi contends that the license agreements concern not only the wholesale operations of U.S. Shoe's footwear business but also its retail operations.

[3]Nine West, Inc. operated the Easy Spirit Retail Division until December 2002. Since that time, the Easy Spirit Retail Division has been operated by Jones Retail Corporation, the corporate sibling of Nine West Footwear. (D.E. 64 at 3 n.3.)

Easy Spirit style that Nine West Footwear has not offered to Miroballi. Similarly, shoppers at Miroballi's Easy Spirit stores have asked Miroballi's President, Daniel Miroballi, about Easy Spirit styles, sizes, and widths that Nine West Footwear has not offered to Miroballi. (D.E. 65 at 24.) Miroballi believes that Nine West Footwear breached its obligations under the license agreements by not making available the complete line of Easy Spirit footwear sold by the Easy Spirit Retail Division. (D.E. 54 at 9-10.)

Nine West Footwear, on the other hand, admits that it did not provide Miroballi with the complete line of Easy Spirit footwear sold by the Retail Division, (D.E. 65 at 15-23), but contends that the license agreements do not obligate it to provide such Easy Spirit products. (D.E. 47 at 7-8.) Nine West Footwear's position is that the license agreements require only that Nine West Footwear, as the operator of the Wholesale Division, provide the complete line of Easy Spirit footwear it lists on "Line Sheets" as its "wholesale Easy Spirit Line." (*Id.* at 10.)

As for how U.S. Shoe performed under the license agreements before its assets were split between Nine West Footwear and Nine West, Inc., the only evidence on this point is the affidavit Daniel Miroballi submitted in support of Plaintiff's summary judgment motion. This affidavit states that "[d]uring its relationship with Miroballi, U.S. Shoe complied with the Agreements and provided Miroballi with all Easy Spirit comfort footwear that U.S. Shoe manufactured and distributed, including all styles, colors, sizes and widths, and . . . sufficient quantities to allow Miroballi to meet the consumer market for the Miroballi Easy Spirit stores." (D.E. 55 at Ex. B, ¶ 15.) The affidavit further states that "[d]uring its relationship with Miroballi, U.S. Shoe did not differentiate between Easy Spirit comfort footwear distributed to independent operators (i.e., wholesale) from Easy Spirit comfort footwear sold to the public via corporate-owned Easy Spirit

5

retail stores (i.e., retail). Miroballi was provided with the same product sold to the public via U.S. Shoe's Easy Spirit retail stores." (*Id.*, ¶ 16.) Defendant contends that these paragraphs of Mr. Miroballi's affidavit lack foundation and should be disregarded. (D.E. 64 at 6).

In his affidavit, Mr. Miroballi also states that "Miroballi was not aware of the split of the operations of Easy Spirit into Wholesale and Retail Divisions by Nine West Footwear and Nine West Group, Inc. until February 2003, when such information was disclosed by Nine West Footwear in this litigation." (D.E. 55 at Ex. B, ¶ 18.) Nine West Footwear has provided deposition testimony that U.S. Shoe had an Easy Spirit Wholesale Division and an Easy Spirit Retail Division before the 1995 asset purchase. (D.E. 66 at Ex. G, 17-18.)). Nine West Footwear has not provided evidence regarding whether U.S. Shoe supplied Miroballi with Easy Spirit footwear from both the Wholesale and Retail Divisions or just the Wholesale Division.

Apart from the issue of whether Nine West Footwear was obligated to provide Easy Spirit footwear distributed by both the Wholesale Division and the Retail Division, Miroballi has asserted that Nine West Footwear did not even furnish Miroballi with all of the Easy Spirit footwear distributed by the Wholesale Division. Specifically, Plaintiff has asserted that the "Line Sheets" Nine West Footwear provided to Miroballi did not include all of the Easy Spirit footwear products listed on the "Line Sheets" given to the Nordstrom and JCPenney department stores. In its Appendix to its Local Rule 56.1(b)(3)(B) Statement of Additional Facts, Plaintiff included Nordstrom, JCPenney, and Miroballi "Line Sheets" which show that Nordstrom and JCPenney were offered Easy Spirit footwear not made available to Miroballi. (D.E. 59 at 8.) Nine West Footwear did not respond to Miroballi's Statement of Additional Facts.

6

B.    Miroballi Complaints and the Account Balance

Near the end of 1999, Miroballi had accumulated an outstanding account balance with Nine West Footwear. Nine West Footwear contends that the account balance was more than $1 million. Miroballi contends that it was $962,000. Because of the account balance, Nine West Footwear suspended shipment of shoes to Miroballi in September 1999. (D.E. 60 at 8-9.)

On September 7, 1999, Daniel Miroballi sent a letter to Rick Paterno, who was President of Nine West Footwear's Easy Spirit Division at the time. In that letter, Dan Miroballi complained that, among other things, Miroballi's stores were not receiving an adequate quantity of footwear. In particular, Mr. Miroballi complained that Miroballi had not received access to the inventory sold by the company owned stores. In that letter, Mr. Miroballi also reminded Mr. Paterno of Nine West Footwear's obligations under the license agreements and asserted that Nine West Footwear had violated the agreements. In addition, Mr. Miroballi identified these problems as the cause of Miroballi's inability to pay its outstanding account balance. (*Id.* at 10-11.)

Mr. Paterno forwarded Mr. Miroballi's September 7, 1999 letter to a number of employees of Nine West Footwear and Jones Apparel Group, Inc. ("Jones Apparel"). Jones Apparel acquired Nine West Group, Inc. and performs credit services for various Nine West entities. One of the Jones Apparel employees who received the September 7, 1999 letter was Cindy Hackney. Ms. Hackney is the immediate supervisor of William Russell, the Director of Credit for Jones Apparel. (*Id.* at 9, 11.)

In or about December 1999, Mr. Russell engaged in discussions with Mr. Miroballi about resolving Miroballi's outstanding account balance with Nine West Footwear. The parties dispute the subject matter of the discussions between Mr. Russell and Mr. Miroballi. Nine West

7

Footwear contends that the two men discussed the inadequacy of the inventory and merchandise mix received by Miroballi. Miroballi asserts that they discussed only the account balance, not how Miroballi came to be behind in payment. At any rate, the parties agree that Mr. Russell spoke to Ms. Hackney and reviewed Mr. Miroballi's September 7, 1999 letter. (*Id.* at 9-11.)

Mr. Russell and Mr. Miroballi had further discussions and came to an agreement, which is at least partly reflected in a December 28, 1999 letter from Mr. Russell to Mr. Miroballi. (*Id.* at 12.) That letter states, in pertinent part, as follows:

Upon acceptance of this agreement NINE WEST INC. Agrees to the following:

1) Nine West has agreed to completely settle your outstanding account which totals $1,045,803.79 as of today's date. This will be accomplished in the following way: Upon receipt of your initial payment of $300,000.00 we will write off approximately $600,000.00 of your outstanding debt. It is understood this initial payment will be received, along with your signed acceptance of this agreement by December 30, 1999. Upon receipt of your final payment of $150,000.00 by January 31, 2000 we will write off the remaining balance of your account.

2) Nine West agrees to continue to ship Miroballi Shoes Inc. on N/60 terms, as long as your account remains in a current status, and you continue to provide current financial information. No shipments will be made until after the initial payment is received.

3) Upon completion of the above $450,000.00 payout, all personal and corporate guarantees will be voided.

4) Nine West will open a new account for Miroballi Shoes Inc as of January 1, 2000.

*Miroballi Shoes Inc. agrees to:*

1) To cancel all pending and outstanding orders and all new future orders will be for shipment after January 1, 2000.

2) Pay all invoices on N/60 terms.

3) Miroballi Shoes Inc will contact Nine West as soon as possible after receiving merchandise if there are any problems regarding quality pricing, etc.

*Please sign as indicated below and return with your initial $300,000.00 payment.*

8

*I have provided two copies of this agreement, keep one copy for your records.*

(D.E. 49 at Ex. M.) Mr. Miroballi executed the December 28, 1999 letter on Miroballi's behalf.

(D.E. 60 at 13.)

On or about February 24, 2000—or approximately two months later—Mr. Russell sent

Mr. Miroballi a letter which contained the voided personal and corporate guarantees. (*Id.*) That

letter also states, in pertinent part, as follows:

> This notarized letter will serve as our formal release of all guarantees, obligations
> and responsibilities to the guarantee agreement entered into August 25, 1995,
> between Nine West Group Inc and the parties listed below. Also enclosed you
> will find the original guarantees and personal financial statements attendent [sic]
> to these guarantees.

> Guarantors released:          Daniel Miroballi and Lina Miroballi
>                                     Anthony Miroballi and Gina M. Miroballi
>                                     Michael Miroballi and Jennifer Miroballi
>                                     Perry Miroballi and Catherine Miroballi

> The return of these guarantees will negate any and all future claims against Nine
> West, Inc. Prior to our signed agreement of 12/28/99. Also enclosed are the
> guarantee release forms.

> If you have any questions please call me.

(D.E. 49 at Ex. N.) Mr. Miroballi never wrote or called Mr. Russell to express disagreement

about the terms of the February 24, 2000 letter. (D.E. 60 at 15.)

Nine West Group contends that the February 24, 2000 letter was merely a further

memorialization of the parties' December 28, 1999 agreement and not a new or separate

agreement. (D.E. 60 at 14.) Nine West Group's understanding is that Miroballi agreed to release

all claims against Defendant arising prior to December 28, 1999. (D.E. 47 at 2-5.) Miroballi's

position is that the December 28, 1999 agreement expressed the full and complete agreement

9

between the parties, and that Miroballi released no claims against Defendant. (D.E. 58 at 3-7.)

## LEGAL STANDARD

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether there is a genuine issue of fact, the court "must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). To avoid summary judgment, the opposing party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

## DISCUSSION

Each of the license agreements contains a provision that it "shall be solely construed and governed by the laws of the State of Ohio." (D.E. 65 at 28.) Under Ohio law, the elements of a breach of contract are "the existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff." *Doner v. Snapp*, 649 N.E.2d 42, 44 (Ohio Ct. App. 1994). Defendant has cited both Ohio and Illinois law and takes the position that "the result remains the same regardless of which law applies." (D.E. 47 at 8 n.5.) Plaintiff agrees that "[t]he elements required for a Plaintiff to prove a breach of contract case under Ohio law are the same as those required under Illinois law," (D.E. 54 at 6 n.4), and similarly cites both Ohio and Illinois law. (D.E. 58 at 6, 15.) The Court will proceed, consistent with the parties' agreement and briefing, on the assumption that Ohio and Illinois law are materially uniform for purposes of

10

resolving the pending motions.[4]

Miroballi contends that it is entitled to summary judgment as to liability because the license agreements obligate Nine West Footwear to provide Miroballi with a complete line of all Easy Spirit footwear regardless of whether it is distributed by the Wholesale or Retail Division and Nine West Footwear has admittedly not provided the complete line of Easy Spirit footwear distributed by the Retail Division. Additionally, Miroballi argues that it entitled to summary judgment as to liability because it has produced uncontroverted evidence that Nine West Footwear also has not supplied Miroballi with the complete line of Easy Spirit footwear distributed by the Wholesale Division (including that Nine West Footwear did not provide Miroballi with all of the Easy Spirit products Nine West Footwear listed on its "Line Sheets" as its "wholesale Easy Spirit line."). Conversely, Nine West Footwear contends that it is entitled to summary judgment because the license agreements require only that Nine West Footwear provide the complete line of Easy Spirit footwear it lists on "Line Sheets" as its "wholesale Easy Spirit Line," and that it has done so. (D.E. 47 at 10.) Nine West Footwear further argues that Miroballi cannot recover on any claims that arose prior to December 28, 1999 because Miroballi released all such claims. Finally, Nine West Footwear argues that Miroballi cannot recover because damages are a necessary element of a contract claim and the testimony of Miroballi's

_____

[4] Federal courts sitting in diversity look to the forum state's choice of law rules to determine the applicable substantive law. *See, e.g., Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Illinois courts will generally apply the choice of law clause selected by the parties in a contract so long as the contract is valid and the law chosen is not contrary to Illinois's fundamental public policy. *See, e.g., Vencor, Inc. v. Webb*, 33 F.3d 840, 844-45 (7th Cir. 1994). Neither party alleges that such public policy issues are potentially in dispute; rather, the parties are in agreement that Ohio and Illinois law are substantively identical regarding the issues in dispute.

damages expert, Cornelius Hoffman, must be barred as unreliable under *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). Nine West Footwear has filed a separate motion to bar the testimony of Mr. Hoffman.

For the reasons discussed more fully below, the Court (1) grants in part Miroballi's motion for summary judgment insofar as the Court finds that Nine West Footwear is liable for failing to provide Miroballi with a complete line of all of the Easy Spirit footwear products that Nine West Footwear manufactured and/or distributed, (2) denies the remainder of Miroballi's motion, (3) denies the entirety of Nine West Footwear's motion for summary judgment, and (4) denies Nine West Footwear's motion to bar the testimony of Plaintiff's damages expert without prejudice to Nine West Footwear's right to refile the motion during the time period for the filing of motions in limine that will be scheduled in the final pretrial order.

A.     Nine West's Provision of the "Wholesale Easy Spirit Line"

Aside from the issue of whether it is required to provide Easy Spirit products distributed by the Retail Division, Nine West Footwear contends that it is not even obligated to provide all Easy Spirit products that it manufactures and/or distributes as the operator of the Wholesale Division. (D.E. 47 at 10.) Nine West Footwear argues that, instead, it is only required to distribute the Easy Spirit footwear products that it lists on "Line Sheets." (*Id.*)

Nine West Footwear admits that "[u]nder the express terms of the license agreements, Nine West Footwear was obligated to provide Plaintiff with 'a complete line' of Easy Spirit shoes from among the products it manufactured and or/distributed." (D.E. 47 at 10.) However, Nine West Footwear asserts that "[t]he parties' use of the phrase 'a complete line' has specific meaning here." (D.E. 47 at 10).

According to Nine West Footwear, "[a] 'line' is the assortment of shoes that a company decides to distribute for a particular season." (D.E. 64 at 8.) Nine West Footwear further explains that each season, Nine West Footwear engages in the process of "selecting the particular styles that it will distribute" and that "[t]hese selected styles are then comp[iled] on 'Line Sheets' that display the styles that will be available in a particular season. The shoes selected for these Line Sheets are what constitutes the wholesale Easy Spirit line." (*Id.* at 8-9.) As noted above, Nine West Footwear argues that it is only obligated to provide to Miroballi the products it lists on these "Line Sheets." (*Id.*)

Inasmuch as Nine West Footwear has taken the position that a "'line' is the assortment of shoes that a company decides to distribute for a particular season," and that it selects "the particular styles that it will distribute" and compiles those on "Line Sheets [which] are what constitutes the wholesale Easy Spirit line," one might conclude that the Easy Spirit products compiled on the "Line Sheets" are the Easy Spirit products that Nine West Footwear distributes. However, Nine West Footwear has admitted that it distributed Easy Spirit products to JCPenney and Nordstrom department stores without also providing those products to Miroballi. (D.E. 65 at 13-14.) Further, Nine West Footwear contends that it was not required to supply these products to Miroballi because they were "provided to JCPenney and Nordstrom outside the regular wholesale line sheets." (D.E. 64 at 4.) Nine West Footwear, in sum, admits that "the parties' agreement requires Nine West footwear to make available to Miroballi a complete line of the Easy Spirit products that it manufactures or distributes," (D.E. 64 at 4), but argues that the "a complete line" language must mean that Nine West Footwear is only obligated to provide the products it places on its "Line Sheets" because otherwise the phrase "a complete line" is rendered

13

"meaningless." (D.E. 64 at 8.) *The Court respectfully disagrees.*

The Court finds that the language of the license agreements which obligates Nine West Footwear to "make available to . . . [Miroballi] a complete line of all [Easy Spirit] products which U.S. Shoe Corporation manufactures and/or distributes," (D.E. 37 at Ex. B, ¶ 2) clearly and unambiguously means that Nine West Footwear, as the successor to U.S. Shoe, must provide Miroballi with all of the Easy Spirit products that Nine West Footwear manufactures and/or distributes.[5]  Contrary to Nine West Footwear's assertion, this interpretation of the license agreements does not render the phrase "a complete line" meaningless.  Rather, under this construction of the license agreements, "a complete line" of a footwear product simply means, *inter alia*, all style variations for that product.  That the footwear products contemplated in the license agreements have various styles is reflected in paragraph 6 of the license agreements, which states, in pertinent part, that "[s]uch products will be stocked in both a current and comprehensive assortment of styles . . ." (D.E. 37 at Ex. B, ¶ 6.)  Logically, the provision of "a complete line" of a footwear product means that the product be provided in the available sizes and widths as well.

Having found that this language of the license agreements is clear and unambiguous, under applicable law the Court may look no further than the terms of the contracts.  *See, e.g., Westfield Ins. Co. v. Galatis*, 797 N.E.2d 1256, 1261 (Ohio 2003) ("When the language of a written contract is clear, a court may look no further than the writing itself to find the intent of

---

[5] The question of whether the license agreements also obligate Nine West Footwear to provide Miroballi with the Easy Spirit products which are now produced by Jones Retail Corporation, as the operator of the Easy Spirit Retail Division, turns upon, among other things, an interpretation of language in paragraph 6 of the license agreements. This issue is discussed further below.

the parties."). Furthermore, because the terms are clear and unambiguous on this point, interpretation of the license agreements is a matter of law upon which the Court may properly grant summary judgment. *See Inland Refuse Transfer Co. v. Browning-Ferris Indus. of Ohio, Inc.*, 474 N.E.2d 271, 272 (Ohio 1984) ("If a contract is clear and unambiguous, then its interpretation is a matter of law and there is no issue of fact to be determined."). Accordingly, the Court grants in part Plaintiff's motion for partial summary judgment insofar as the Court finds that Nine West Footwear is liable for failing to provide Miroballi with complete line of all of the Easy Spirit footwear products that Nine West Footwear manufactured and/or distributed.[6]

The Court notes, moreover, that it is Nine West Footwear's interpretation of "a complete line" that would render terms of the license agreements meaningless. More specifically, if, as Nine West Footwear advocates, it were only obligated to distribute to Miroballi those products it decides to place on its "Line Sheets," while at the same time being free to distribute to customers other than Miroballi whatever products it decides to place "outside the Line Sheets," then the language in the license agreements requiring Nine West Footwear to provide Miroballi "all products which U.S. Shoe Corporation manufactures and/or distributes" would have no significance. The law frowns on interpretations of contracts that render portions of the agreements (and certainly central portions, such as this one) redundant or meaningless. *See, e.g., Affiliated FM Ins. Co. v. Owens Corning Fiberglas Corp.*, 16 F.3d 684, 686 (6th Cir. 1994)

---

[6]Nine West Footwear has requested that, in the event the Court rejects its interpretation of "a complete line," the Court "enter an Order limiting the extent of Nine West Footwear's liability to those shoes offered to JCPenney and Nordstrom that were not also offered to Miroballi." (D.E. 64 at 9 n.9.) The Court declines this request because, among other things, the extent of Miroballi's liability and damages is not fully resolved in this memorandum and opinion, as discussed below.

15

(collecting authorities applying Ohio law).

Indeed, although it was not necessary for the Court to rely on more than the express terms of the license agreements, the extrinsic evidence also supports the conclusion that Nine West Footwear's position is untenable. As noted above, in its Appendix to its Statement of Additional Facts, Miroballi included "Line Sheets" Nine West Footwear provided to Nordstrom, JCPenney, and Miroballi which show that Nordstrom and JCPenney were offered Easy Spirit footwear not made available to Miroballi. (D.E. 59 at 8.) By not responding to Miroballi's Statement of Additional Facts, Nine West Footwear has admitted that the "Line Sheets" it provided to Nordstrom and JCPenney included Easy Spirit products not contained on the "Line Sheets" provided to Miroballi. *See* Local Rule 56.1(b)(3)(B) (mandating that all material facts set forth in a statement of additional facts "will be deemed to be admitted unless controverted by the statement of the opposing party"); *see also Bordelon v. Chicago School Reform Bd. of Trustees*, 233 F.3d 524, 528 (7th Cir. 2000) ("Given their importance, we have consistently and repeatedly upheld a district court's discretion to require strict compliance with its local rules governing summary judgment.") (collecting cases). This fact reinforces the conclusion that Nine West Footwear's proffered interpretation of the language "a complete line" cannot be accepted because, just as there is no meaningful obligation if Nine West Footwear can decide what products to place "outside the Line Sheets," there is no real obligation if Nine West Footwear can create different "Line Sheets" for different customers.

The Court next turns to the question of whether Nine West Footwear's obligations are limited to providing the Easy Spirit footwear products it manufactures and/or distributes as the operator of the Easy Spirit Wholesale Division or whether the license agreements also mandate

16

the provision of Easy Spirit products manufactured and/or distributed by the Easy Spirit Retail Division.

B.    The Wholesale and Retail Divisions

Miroballi and Nine West Footwear agree that, after the asset purchase transaction and Nine West Footwear's assumption of U.S. Shoe's obligations under the license agreements, the license agreements "remain unchanged." (D.E. 64 at 7; *see* D.E. 54 at 9-11). Therefore, the terms of the license agreements dictate the extent of Nine West Footwear's obligations, including whether Nine West Footwear is required to produce only those products it manufactures and/or distributes as the operator of the Easy Spirit Wholesale Division or whether Nine West Footwear also is committed to provide products from the Easy Spirit Retail Division, which is now operated by Jones Retail Corporation.[7]

As set forth above, paragraph 2 of the license agreements states that "U.S. Shoe further agrees to make available to [Miroballi] during the term of this Agreement a complete line of all

_____

[7]If the license agreements require that Miroballi be provided with all Easy Spirit footwear products manufactured and/or distributed by U.S. Shoe's wholesale and retail divisions, Nine West Footwear, as the successor to U.S. Shoe's obligations under the agreements, cannot excuse its failure to provide the products manufactured and/or distributed by the retail division on grounds that Jones Retail Corporation now operates that division. Any difficulties Nine West Footwear might have in providing the Easy Spirit products distributed by Jones Retail Corporation would not excuse Nine West Footwear's failure to perform because such difficulties would have been foreseeable by Nine West Footwear at the time it assumed U.S. Shoe's obligations under the license agreements and the wholesale and retail assets of U.S. Shoe were split between Nine West Footwear and its sister corporation. *See Truetried Serv. Co. v. Hager*, 691 N.E.2d 1112, 1118 (Ohio Ct. App. 1997) ("'While in certain instances, legal impossibility of performance is a defense to the performance of a contract, and while a condition may be implied by which the promisor may be relieved from his unqualified obligation to perform, such condition is implied only in those cases where performance has been rendered impossible without his fault and when the difficulties could not have reasonably been foreseen.'") (quoting *London & Lancashire Indem. Co. of Am. v. Bd. of Comm'rs of Columbiana County*, 140 N.E. 672, 676 (Ohio 1923)).

17

products which the United States Shoe Corporation, manufactures and/or distributes, as described in Paragraph 6 below." (D.E. 37 at Ex. B, ¶ 2.) Paragraph 6 of each license agreement then states, in relevant part, that

> [Miroballi] will maintain and offer for sale to the public at all times at the location described above only footwear products which are based on "comfort" construction and which are manufactured and/or distributed by the Easy Spirit, Cobbie, Joyce, Selby and Marx & Newman Division of The United States Shoe Corporation.

(*Id.*, ¶ 6.) The license agreements do not define "the Easy Spirit, Cobbie, Joyce, Selby and Marx & Newman Division" and it is not clear from the terms of these agreements whether this is a wholesale or retail division or a general division that contains wholesale and retail subdivisions. Consequently, the resolution of the issue will require a consideration of extrinsic evidence. *See, e.g., Westfield*, 797 N.E.2d at 1261 ("[W]here a contract is ambiguous, a court may consider extrinsic evidence to ascertain the parties' intent.").

In support of its position that it is only obligated to provide Easy Spirit products that it manufactures and/or distributes as the operator of the Wholesale Division, Nine West Footwear points to the deposition testimony of Noel Hord, the former president and CEO of the footwear group of U.S. Shoe. (D.E. 65 at 13.) Mr. Hord testified that U.S. Shoe had an Easy Spirit Retail Division and an Easy Spirit Wholesale Division. (D.E. 66 at Ex. G, 17-18.) However, Mr. Hord did not testify regarding whether U.S. Shoe provided Miroballi only with Easy Spirit products from the wholesale division. (*Id.*)

Nor is the matter resolved by Daniel Miroballi's affidavit, mentioned above, which states that "[d]uring its relationship with Miroballi, U.S. Shoe complied with the Agreements and provided Miroballi with all Easy Spirit comfort footwear that U.S. Shoe manufactured and

18

distributed, including all styles, colors, sizes and widths, and . . . sufficient quantities to allow Miroballi to meet the consumer market for the Miroballi Easy Spirit stores," (D.E. 55 at Ex. B, ¶ 15), and that "[d]uring its relationship with Miroballi, U.S. Shoe did not differentiate between Easy Spirit comfort footwear distributed to independent operators (i.e., wholesale) from Easy Spirit comfort footwear sold to the public via corporate-owned Easy Spirit retail stores (i.e., retail). Miroballi was provided with the same product sold to the public via U.S. Shoe's Easy Spirit retail stores." (*Id.*, ¶ 16.)

These paragraphs of Mr. Miroballi's affidavit are not competent evidence because the affidavit does not identify the source of his knowledge. He may be basing his statements on direct observations of U.S. Shoe's retail inventory he made while visiting U.S. Shoe's corporate owned Easy Spirit stores in 1994, on inadmissible hearsay or speculation, or on some other grounds, proper or improper. The Court is not allowed to guess among these possibilities. Because Mr. Miroballi does not identify or set forth an appropriate foundation for these conclusions, they must be disregarded, at least as presented in the summary judgment papers. *See, e.g., Ward v. First Federal Savings Bank,* 173 F.3d 611, 618 (7th Cir. 1999) ("The Malkowski affidavit merely asserts that he is 'aware' of the alleged instruction by Pavlic; it does not reveal the source of Malkowski's awareness–be it a written directive from Pavlic, a conversation with him, or merely water-cooler gossip. As such, the affidavit fails to establish that Malkowski has personal knowledge . . .").

Because of the lack of proper evidence on this disputed point, the question of whether the license agreements obligate Nine West Footwear to provide Easy Spirit products from both the Retail and Wholesale Divisions cannot be resolved on the parties' motions, which are

accordingly denied as to this issue. *Accord, e.g, Westfield,* 797 N.E.2d at 1262 ("It is generally the role of the finder of fact to resolve ambiguity" concerning a contract).[8]

C.     Miroballi Complaints and the Account Balance

As set forth above, Defendant contends that the February 24, 2000 letter from Mr. Russell to Mr. Miroballi, which mentions the release of claims, was a further memorialization of the parties' December 28, 1999 agreement and Defendant's understanding is that Miroballi agreed to release Defendant from all claims arising prior to December 28, 1999. As also explained above, Miroballi's position is that the December 28, 1999 agreement, which does not mention the release of claims, expressed the full and complete agreement between the parties, meaning that Miroballi released no claims against Defendant. Further, the parties dispute certain facts surrounding the December 28, 1999 agreement and the February 24, 2000 letter, including what Miroballi complained about to Nine West Footwear and when Miroballi did so.

"As a general rule of construction, a court may construe multiple documents together if they concern the same transaction." *Center Ridge Ganley, Inc. v. Stinn,* 511 N.E.2d 106, 109 (Ohio 1987). However, where, subsequent to an agreement, one party writes a letter that

---

[8] As previously indicated, the parties agree that the license agreements "remain unchanged" by the asset purchase transaction and Nine West Footwear's assumption of U.S. Shoe's obligations under those license agreements. (D.E. 64 at 7; *see* D.E. 54 at 9-11). As a result, the parties' debate about whether the transaction was a merger or not is besides the point. Instead, the issue of the extent of the duties owed under this contract will need to be resolved on factual grounds along the lines outlined above—e.g., whether, on the one hand, Miroballi previously was provided with both wholesale and retail product (as Miroballi asserts (*e.g.,* D.E. 54 at 10; D.E. 58 at 10-11)), or whether, as Defendant contends, there was always a split between wholesale and retail operations such that Miroballi never was receiving any wholesale products. ((D.E. 64 at 6) (Defendant asserting that "in short, there was no 'split' of the Easy Spirit retail and wholesale divisions after the U.S. Shoe transaction and Miroballi's argument that this 'altered' the agreements is simply unsupported by the facts.")).

purports to explain the terms of the agreement but the other party does not concur in the interpretation, the letter cannot be considered part of the original agreement. *See, e.g.,* 1 Williston on Contracts, § 4:13 (4th ed. 2003) (collecting authorities and citing, *inter alia, Luft v. Borzykowski,* 18 Ohio App. 447 (1923)). Whether the parties intended the December 28, 1999 agreement and the February 24, 2000 letter to be part of a single contract is a question of fact that must be determined in light of the surrounding circumstances. *See, e.g., Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Turtur,* 892 F.2d 199, 204 (2d Cir. 1989) ("Whether the parties intended that the two agreements should be interdependent is a question of fact which turns upon the circumstances of each case.") (internal quotation omitted); *accord* 17A C.J.S. *Contracts* § 315 (1999) (collecting cases and stating that "[t]he question of whether or not two instruments are parts of one and the same transaction must, of necessity, be determined by the peculiar facts of each particular case."). Such questions of intent of contracting parties are often inappropriate for disposition on summary judgment. *See, e.g., Valmac Indus., Inc. v. Ecotech Machinery, Inc.,* 738 N.E.2d 873, 876 (Ohio Ct. App. 2000) ("Because the clause is ambiguous in that regard, the intent of the parties in that respect must be determined by a trier of fact. It follows, therefore, that the court could not determine that issue, or whether the clause was a part of the parties' contract, from the pretrial motions that . . . [were] filed.") (internal citation omitted). Moreover, summary judgment would be particularly inappropriate here given that, as mentioned above, significant aspects of the factual circumstances surrounding the December 28, 1999 agreement and the February 24, 2000 letter are in dispute. Accordingly, the Court denies Defendant's motion for summary judgment concerning any claims arising prior to December 28, 1999.

D.    Breach of Contract Damages

The Court also respectfully rejects Nine West Footwear's argument that it is entitled to summary judgment on the basis that Miroballi is precluded from recovering for breach of contract because Miroballi cannot prove that it has been damaged. As noted above, Nine West Footwear has separately submitted a motion to bar the testimony of Miroballi's damages expert, Cornelius Hoffman, and contends that preclusion of Mr. Hoffman's testimony requires summary judgment in its favor.

However, even if Mr. Hoffman's testimony were excluded, this would not warrant summary judgment in Nine West Footwear's favor because, *inter alia*, Nine West Footwear has presented other evidence that it suffered damages. Specifically, Miroballi has presented deposition testimony from a Miroballi store manager stating that approximately twice a week, a shopper at one of the Miroballi Easy Spirit stores will ask, by name, for an Easy Spirit style that has not been offered to Miroballi. Plaintiff also has presented the affidavit of Mr. Miroballi, in which he states that he has personally received inquiries from shoppers at Miroballi Easy Spirit stores concerning Easy Spirit styles, sizes, and widths that have not been offered to Miroballi. (D.E. 65 at 24). Indeed, Nine West Footwear has admitted these facts. (*Id.*) A reasonable inference that could be drawn from these undisputed facts is that Miroballi suffered injury in the form of lost sales. *See, e.g., Coastal Fuels of Puerto Rico, Inc. v. Caribbean Petroleum Corp.*, 79 F.3d 182, 195 (1st Cir. 1996) ("[Defendant] concedes that a Coastal employee, Andrew McIntosh ('McIntosh') testified that Coastal was getting 'feedback' from its customers that its prices were not competitive. Whether or not to credit such testimony is a decision best left to the factfinder. McIntosh's testimony, if believed, could lead a jury to reasonably infer actual injury

22

in the form of lost sales.") (internal citations omitted). Moreover, independent of whether Mr. Hoffman's testimony is excluded, Miroballi likely would be entitled to at least nominal damages. *See DeCastro v. Wellston City School District Bd. of Educ.*, 761 N.E.2d 612, 615 (Ohio 2002) ("[W]e hold that in a case where a plaintiff proves breach of contract at trial but fails to prove actual damages resulting from that breach, the trial court may enter judgment for the plaintiff and award nominal damages.");[9] *see also Olympia Hotels Corp. v. Johnson Wax Development Corp.*, 908 F.2d 1363, 1372 (7th Cir. 1990).

Hence, regardless of whether Mr. Hoffman's testimony is admissible, Nine West Footwear is not entitled to summary judgment. Because Defendant's separately filed motion to bar the testimony of Mr. Hoffman cannot support summary judgment for Defendant even if it is granted, and because such motions to exclude evidence are typically brought at the pretrial stage, the Court denies the motion to bar without prejudice. Defendant may refile its motion to bar the testimony of Mr. Hoffman, along with any other motions to exclude evidence, during the time period for motions in limine that will be scheduled in the final pretrial order.

---

[9] This is not a case "where the plaintiff acknowledged at the outset that no economic damage occurred," which is a set of circumstances which the Ohio Supreme Court held justified entry of summary judgment on a breach of contract claim. *DeCastro*, 761 N.E.2d at 617.

## CONCLUSION

For the foregoing reasons, the Court (1) grants in part Miroballi's motion for partial summary judgment insofar as the Court finds that Defendant is liable for failing to provide Miroballi with a complete line of all of the Easy Spirit footwear products that Nine West Footwear manufactured and/or distributed, (2) denies the remainder of Miroballi's motion, (3) denies Defendant's motion for summary judgment, and (4) denies Defendant's motion to bar expert testimony without prejudice to Defendant's right to refile the motion to bar during the time period for motions in limine that will be scheduled in the final pretrial order.

Mark Filip
United States District Judge
Northern District of Illinois

Enter:     JUN 7 - 2004

24